### M. Everett WEISER

v.

### LATIMORE TOWNSHIP, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided Nov. 21, 2008.

---

Guy P. Beneventano, Harrisburg, for appellant.

Charles M. Suhr, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Latimore Township appeals an order of the Court of Common Pleas of Adams County (trial court) vacating two decisions of the Township's Board of Supervisors (Supervisors) to deny approval of two final subdivision plans submitted by M. Everett Weiser. The principal issue we consider is whether a final subdivision plan, which is substantially similar to a deemed approved preliminary plan, must be approved notwithstanding any zoning concerns the Supervisors may have.

## BACKGROUND

The facts of this case are largely undisputed. M. Everett Weiser and Olive L. Weiser own property along Old U.S. Route 15 in Latimore Township. Part of the Weiser property lies in a Commercial–Industrial District (CI District) and part lies in an Agricultural–Conservation District (AC District). In July 2001, part of the Weiser property along Old Route 15 was subdivided into three lots (2001 Subdivision).

In 2002, the Township amended its 1987 Zoning Ordinance by, *inter alia,* creating a new Agricultural–Conservation II District and reconfiguring the zoning districts in the Township to reduce the CI District along the Old Route 15 corridor.[1] The 2002 ordinance removed all of Weiser's property from the CI District and placed it, instead, in the AC District. Weiser, along with Terry Rickert and Robert Jun-

---

1. This appeal has been preceded by extensive litigation, only part of which is recited here.

kins, who were seeking to develop a lot they had purchased from Weiser, challenged the legality of the 2002 ordinance, and the ordinance was held to be void *ab initio*. *Rickert v. Latimore Township Board of Supervisors*, 869 A.2d 1086, 1094 (Pa.Cmwlth.2005).

While the litigation on the 2002 ordinance was pending, Weiser submitted a preliminary subdivision plan (Preliminary Subdivision Plan 1) to the Supervisors for their review. The purpose of the plan was to create 13 lots, principally by subdividing one lot created in 2001. Adjoining land was also subdivided to add to the size of some of the proposed 13 lots. Under the 1987 Zoning Ordinance, Lot 1 of Preliminary Subdivision Plan 1 lies completely in the AC District; Lots 4, 5, 6 and 7 lie partially in the CI District and partially in the AC District; and the remainder of the Lots lie completely within the CI District.

At the same time, Weiser submitted a second preliminary subdivision plan (Preliminary Subdivision Plan 2) proposing to subdivide a different portion of his land, which has a gross area of 131.287 acres, into seven lots. Under the 1987 Zoning Ordinance, Lot 1 of Preliminary Subdivision Plan 2 lies in the AC District; Lots 2 and 3 lie partially in the CI District and partially in the AC District; and Lots 4–7 lie entirely within the CI District.

In September 2005, the Township Planning Commission recommended that the Supervisors deny Preliminary Subdivision Plans 1 and 2. The Supervisors did so on October 10, 2005, noting that the preliminary subdivision plans presented zoning problems. However, the Supervisors did not issue a written decision. Believing that his preliminary plans were deemed approved, Weiser filed a mandamus action against the Township. The trial court held that Section 508(3) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508(3),[2] entitled Weiser to deemed approval of his Preliminary Subdivision Plans 1 and 2 and ordered the Supervisors to sign the plans.

On November 13, 2006, the Township adopted Ordinance No.2006–4, which, like the earlier failed 2002 ordinance, amended the 1987 Zoning Ordinance to effect the same changes in the zoning districts. Weiser's property was again removed from the CI District and placed entirely in the AC District.

On November 14, 2006, Weiser submitted Final Subdivision Plans 1 and 2 to the Supervisors, and each final plan was essentially the same as each deemed approved preliminary plan.[3] Section 432.A of the 1987 Zoning Ordinance lists 24 permitted uses in the CI District, and Section 432.B lists 13 uses permitted in the district by special exception. Both the preliminary and the final subdivision plans contained a "List of Intended Uses," where Weiser listed 22 of the 24 permitted uses for the CI District. In addition, under "List of Intended Supplemental Uses," Weiser list-

---

2. Section 508(3) of the MPC provides:
   Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application *in terms as presented* unless the applicant has agreed in writing to an extension of time or change in the prescribed manner of presentation of communication of the decision, *in which case, failure to meet the extended time or* change in manner of presentation of communication shall have like effect.
   53 P.S. § 10508(3) (emphasis added).

3. A difference between Weiser's preliminary and final plans was in the number of proposed lots. Each final plan combined two lots, which appeared in its predecessor preliminary plan, into one lot. Stated otherwise, each final plan proposed fewer subdivisions.

ed 9 of the 13 uses permitted in the CI district by special exception. Final Subdivision Plans 1 and 2 were forwarded to other agencies for comment.

In two letters dated November 21, 2006, Township Engineer John Shambaugh, who is also the Zoning Officer, provided the Planning Commission with comments concerning Final Subdivision Plans 1 and 2.[4] In the "Zoning Ordinance" portion of his letters, Shambaugh stated as follows:

1.  Section 433.A–1.C–2—The minimum gross acreage for the proposed lots should be 2.75 acres as a result of the type of onlot system proposed.

2.  Section 403.G–2—It is indicated on the plan that a subdivision took place in May 2001, therefore, this subdivision cannot take effect until May 2008.

Reproduced Record at 21a (R.R. ——).

In two December 4, 2006, memoranda, the Adams County Office of Planning and Development (County) provided comments on Final Subdivision Plans 1 and 2.[5] Specifically, the County expressed concern about how the subdivided lots would be used. With respect to Final Subdivision Plan 2, the County stated:

We previously indicated that, given minimum lot area and related requirements for various uses, some of the proposed lots would not be able to be developed with all of the uses listed in the "List of Intended Uses" and the "List of Intended Supplemental Uses." We recommended that these lists be removed in their entirety. This recommendation was not followed.

We continue to recommend that these lists be removed completely. At this time, Latimore Township has again amended its Zoning Ordinance, which has resulted in the Commercial Industrial (CI) District again being removed from this property. No uses of these lots have been formally proposed (that is, through the submission of a formal Land Development Plan). Therefore, regardless of the fact that the lots were approved in accordance with the dimensional requirements of the CI District, we believe that none of the commercial, industrial, or related uses authorized in the CI District can be permitted on these future lots. These future lots, we believe, must be subject to the use requirements of the zoning district in which they are now located, the Agricultural Conservation (AC) District. Again, the use "Lists" should be removed in their entirety.

R.R. 74a. In its summary, the County explained:

The predominant issue here remains to be the "Lists" of intended uses. Because the CI District designation has been removed from this property before any uses have been formally proposed on these lots, *it is our belief that these lots may only be used in accordance with the permitted uses of the current zoning district applied to this property, the AC District.*

R.R. 23a, 75a (emphasis added).

On March 27, 2007, the Planning Commission decided to act upon the concerns

---

4.  Shambaugh repeated these comments in two letters dated March 3, 2007. R.R. 32a, 85a.

5.  The County also attached copies of its April 19, 2002, memoranda on the Preliminary Subdivision Plans 1 and 2, which expressed concern with the list of intended uses for the property. Specifically, the County explained that "[g]iven lot area and related standards for many of the uses, many of the listed uses would not be permissible on the lots as proposed.... We therefore recommend that the list of 'intended' uses be removed in its entirety from the plan." R.R. 27a, 78a.

raised by the County. Accordingly, it recommended that the Supervisors approve the final plans with certain conditions, including removal of the "use lists" from the final plans.

On April 9, 2007, the Supervisors held a meeting and asked Weiser what type of development was expected for the lots proposed in Final Subdivision Plans 1 and 2. Weiser replied that "they would have to comply with the uses stated on the plans that are in accordance with the subdivision and land development ordinance. The lots have not been on the market so [we] do not know [what the future buyers will propose]." R.R. 9a, 60a. Weiser admitted some uncertainty concerning the precise boundaries of the lots proposed in the plans. After discussion, Weiser agreed to an extension of time for the Supervisors to act on the final plans in order to give Weiser an opportunity to clear up the question of the lot sizes.

At its May 14, 2007, meeting, the Supervisors voted to approve both Final Subdivision Plans 1 and 2 with numerous conditions. Weiser was given seven days to accept the conditions. Weiser accepted some of the conditions and the Supervisors dropped other conditions; however, the plans were ultimately denied when Weiser refused to accept three of the conditions: removal of the use lists from the plans; a seven-year restriction on any further subdivision of the new lots; and installation of any and all necessary roadway improvements at Weiser's expense.

The Supervisors issued two decisions denying both Final Subdivision Plans 1 and 2. The Supervisors pointed out that Weiser has not proposed any specific use for the proposed subdivided lots but rather has

> included a laundry list of permitted uses, none of which are more than theoretical and some of which cannot be maintained on the lots as presently configured.

R.R. 13a, 64a. The Supervisors acknowledged that Preliminary Subdivision Plans 1 and 2 had been deemed approved, but they concluded that Final Subdivision Plans 1 and 2 could not be approved until Weiser obtained all necessary zoning approvals. The Supervisors also concluded that the uncertainties concerning the precise boundaries of the new lots constituted "latent defects," also justifying the rejection of Final Subdivision Plans 1 and 2.

Weiser appealed,[6] and the trial court sustained the appeal.[7] The trial court held that the Supervisors committed an error of law by not approving the final subdivision plans. Relying on *Annand v. Board of Supervisors of Franklin Township, Chester County*, 160 Pa.Cmwlth. 93, 634 A.2d 1159 (1993), the trial court held that the Supervisors were required to approve the final plans because they were substantially the same as the previously deemed approved preliminary plans.

Further, the trial court held that the Supervisors' attempt to work zoning issues into the subdivision process was improper. The trial court concluded that the zoning concerns of the Supervisors were factually unfounded, noting that the Township's Zoning Officer did not raise any zoning problems with respect to use in his review. The Supervisors' zoning concerns were legally unfounded because they lacked support in either the MPC or the Township's Subdivision and Land Development Ordi-

---

**6.** The decisions on Final Subdivision Plans 1 and 2 were combined into one appeal.

**7.** In its opinion, the trial court explained that it resolved the case based on the reasons set forth in its opinion in *Terry Rickert and Robert Junkins v. Latimore Township* (C.P. Adams County, 07–S–160, filed December 7, 2007).

nance[8] (SALDO). With respect to the requirement that Weiser remove the use lists from Final Subdivision Plans 1 and 2, the trial court noted that it was inconsistent for the Supervisors to require the removal of use lists from the plans but at the same time require approval of the Zoning Board of the uses for the newly created lots.

Finally, the trial court criticized the Township's denial of Final Subdivision Plans 1 and 2 for reasons different from those given in the conditional approval. The Court observed that "[a]pparently, the Township is treating the denial as a 'do-over,'" in contravention of the MPC. Trial Court Opinion, December 7, 2007, at 2; R.R. 143a. According to the trial court, the Supervisors' attempt in this regard was improper, also requiring approval of Final Subdivision Plans 1 and 2.

The Township appealed to this Court.[9] On appeal, the Township raises two issues for our review.[10] First, the Township argues that the Supervisors' rejection of Final Subdivision Plans 1 and 2 was appropriate. The plans presented zoning issues, and these issues were a proper basis for denial. Second, the Township argues that substantial evidence supports the Supervisors' findings that zoning issues remain unresolved, particularly where there are "latent defects" in the plans, i.e., the imprecise boundaries of the proposed new lots.

## DISAPPROVAL OF FINAL PLANS

We turn first to the Township's argument that the Supervisors properly denied approval of the final plans because the uses for the new lots have not yet been approved by the zoning officer. Weiser counters that the MPC required the Supervisors to approve Final Subdivision Plans 1 and 2 because they were substantially identical to the deemed approved preliminary plans. Land use regulation by zoning, he contends, is separate and apart from planning regulation that is done under a SALDO. We agree.

The MPC provides that an applicant with approval of its preliminary plan is entitled to final approval. Section 508(4)(i) states, in relevant part, as follows:

> [W]hen a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided.

53 P.S. § 10508(4)(i) (emphasis added). This statutory provision formed the basis of this Court's decision in *Annand*, 160 Pa.Cmwlth. 93, 634 A.2d 1159, on which the trial court relied.

In *Annand*, a landowner with a deemed approved preliminary subdivision plan had the final plan rejected for the stated reason that it did not conform to the township's zoning ordinance. This Court held that zoning was not a basis for rejecting a final subdivision plan, explaining as follows:

**8.** Latimore Township, Pa., The Latimore Township Subdivision and Land Development Ordinance (1992).

**9.** Where the trial court takes no additional evidence, our scope of review in a land use appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Zajdel v. Board of Supervisors of Peters Township*, 925 A.2d

215, 218 n. 6 (Pa.Cmwlth.2007). A governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.*

**10.** The Township identifies eight issues in its Statement of Questions Presented, but the Argument section of its brief contains two overarching issues, which are addressed herein.

[T]he Township erred in rejecting the final plan after the preliminary plan had been deemed approved. To be approved, the final plan needed only to be the same plan as the deemed-approved preliminary plan with the additional engineering details required by the subdivision ordinance. The final plan met this requirement and it should have been approved by the Board of Supervisors.

*Annand,* 634 A.2d at 1161. However, this Court also rejected the notion that a deemed approval of the preliminary plan also included approval of any variances required by the zoning ordinance. We explained that approval of a preliminary plan, whether obtained by vote or by statutory deemer, relates only to subdivision and land development matters and not to zoning matters. Accordingly, this Court held that the supervisors were required to approve the final plan but clarified this approval did not extend to any zoning approvals, such as a variance.

Notwithstanding the teachings of *Annand,* the Township argues that the Supervisors' actions in this case were dictated by and are fully in accordance with *Graham v. Zoning Hearing Board of Upper Allen Township,* 520 Pa. 526, 555 A.2d 79 (1989). In *Graham,* a preliminary subdivision plan was deemed approved by the township board of commissioners. After appeal, the plan was approved by the zoning hearing board with 10 conditions to ensure compliance with zoning requirements. At the time *Graham* was decided, Section 1007 of the MPC, 53 P.S. § 11007, required parties aggrieved by a land development plan approval to appeal to the zoning hearing board, as opposed to the

trial court, which is the current procedure.[11] The Supreme Court held that in exercising its adjudicatory authority under Section 1007, a zoning hearing board could approve or disapprove a plan under appeal; it could not impose conditions. The Supreme Count held that only the township supervisors could impose conditions while the plan was before them for review. The Supreme Court explained its reasoning as follows:

Once a preliminary application has been approved, *the application is entitled to final approval in accordance with the original preliminary application.* Thus, final approval of a subdivision plan is automatic unless the final plan is different from the preliminary plan. Significantly though, § 508(4) does permit the governing body to place conditions upon the approval of either the preliminary or final plan with the applicant's acceptance.

Since § 508 is specific in its requirement that defects in a plan be addressed by the governing body prior to either preliminary or final approval, it is clear that any question and restriction on the use or development of the property be considered by the governing body at the fact-finding phase of the procedure. Any zoning problems must be considered at the planning stage for the purpose of approving or disapproving the plan. Otherwise, the governing body would not have the required information to make an informed decision. The fact that any changes in zoning laws will not affect a pending application supports the conclusion that zoning plays an important role in determining whether to approve or disapprove a plan. *Thus,*

---

11. Section 1007 of the MPC has been repealed; appeals of subdivision and land development decisions by a governing body are now taken to the court of common pleas.

Section 1001–A of the MPC, 53 P.S. § 11001–A was added by the Act of December 21, 1988, P.L. 1329; *Folino v. Greenwich Township,* 862 A.2d 176, 180 (Pa.Cmwlth.2004).

*§ 508 makes it quite clear that zoning issues should be resolved no later than the acceptance of the final plan by the governing body.*

*Graham,* 520 Pa. at 532, 555 A.2d at 81–82 (emphasis added).

Relying on the final sentence of the above-quoted language, the Township argues that *Graham,* not *Annand,* governs the outcome here. It believes, apparently, that there is an inconsistency between the two holdings, but there is not.

First, the holding in *Graham* relates to what powers a zoning hearing board may exercise when it considers objections to a preliminary or final plan under a statutory appeal procedure that no longer exists. Its other holding is that a final plan similar to a preliminary plan must be approved, as was held in *Annand.* The Supreme Court states that zoning issues *should* be addressed at either the preliminary or final plan stage; however, this exhortation is not the holding.[12]

Second, the question of whether zoning approvals must be obtained as part of the land development approval is governed by the terms of the SALDO. For example, in *Borough of Jenkintown v. Board of Commissioners of Abington Township,* 858

A.2d 136 (Pa.Cmwlth.2004), this Court held that the board of commissioners erred in approving a final plan without including a condition for zoning approval because the SALDO required the zoning officer to approve the plan before the governing body could approve it. By contrast, it cannot be discerned from *Graham* whether the township's SALDO incorporated zoning into its terms.

■ Here, unlike the situation in *Borough of Jenkintown,* the Township's SALDO does *not* require an applicant to receive zoning approval before the Supervisors can grant final plan approval. The Township's SALDO "suggests" that a developer should consult with the Township Planning Commission about the zoning requirements when preparing a preliminary plan.[13] This mildly worded advice in the Township's SALDO did not authorize the Supervisors to weave zoning requirements into the final plan review process. We hold that because Weiser's preliminary subdivision plans were approved, the Supervisors were required to approve the final plans regardless of any zoning issues that they perceived. The Supervisors' failure to do so constitutes an error of law.[14]

12. The Supreme Court suggested that if zoning is overlooked in the preliminary plan stage, it may be too late to bring it up for the first time at the final plan stage. *Graham,* 520 Pa. at 532, 555 A.2d at 81–82.

13. Section 301.4 of the SALDO states:
Before going ahead with the Preliminary Plan procedure or with steps to acquire land or subdivide, *it is suggested that the subdivider or developer be familiar with these regulations and should consult* with the Township Planning Commission about the following factors:
* * *
   h. requirements of the Township Zoning Ordinance.
LATIMORE TOWNSHIP SALDO, § 301.4.h (emphasis added).

14. Weiser challenges the Supervisors on several grounds. He argues that the Township's appeal is moot because it did not appeal the trial court's determination that the Supervisors' procedural actions in denying the final plans diverged from the requirements of the MPC and, thus, require a deemed approval of the final plans. Weiser also argues that the SALDO did not authorize the Supervisors to issue a conditional approval that turned into an express denial after so many days. Finally, Weiser contends that the Supervisors' decisions did not provide adequate reasons for denying the final plans. In light of our disposition of the case, we need not address these issues.

The Township argues that substantial evidence supports the Supervisors' findings re-

## LATENT DEFECTS

■ We turn next to the Township's argument that a subdivision plan with latent defects cannot be approved. The Township asserts that the boundaries of the lots proposed in Final Subdivision Plans 1 and 2 were uncertain, and these so-called "latent defects" justified disapproval of the plans. Weiser responds that the "latent defects" were mere typographical errors that were also present on the preliminary plans. Further, he notes that he corrected these errors at the May 14, 2007, Supervisors' meeting. Weiser also contends that because the Supervisors voted to impose conditions on his final plans without any reference to "latent defects," the Township's argument lacks any foundation.

To support its latent defect argument, the Township relies on *Wynnewood Company v. Board of Supervisors of Whitemarsh Township*, 24 Pa. D. & C.3d 216 (1980), *affirmed*, 71 Pa.Cmwlth. 559, 455 A.2d 742 (1983). In that case, a preliminary subdivision plan was approved, but the final subdivision plan was denied because of defects in the plan identified by township staff. The final plan revealed substantial differences in the contour of the land that were not apparent on the preliminary plan. The trial court affirmed the township's disapproval, explaining as follows:

> First, the landowner's revised final plan does not conform to its preliminary plan. The landowner's preliminary plan gave the impression that the subject area could be easily developed. *However, when the revised final plan was presented, dramatic differences in contour were revealed for the first time. In fact, the differences were sufficiently significant*

> *to suggest that the landowner may have been attempting to mislead the board.* Second, the revised final plan described numerous other defects including ones relating to on-lot grading and the existence of excessively steep slopes. These defects were not present nor discoverable in the landowner's preliminary plan by virtue of the fact that greater detail is required for final plans.

24 Pa. D. & C.3d at 218 (emphasis added).

The Township's reliance on *Wynnewood* is misplaced. In *Wynnewood*, the "defects" in the final plan were significant; not present or discoverable on the preliminary plan; and raised the suspicion that the landowner was engaging in deception. These factors are missing here.

There was some uncertainty surrounding the precise boundaries of the new lots described in both the preliminary and final subdivisions. When the Supervisors gave conditional approval to the final plans, they did not mention the "latent defects." More importantly, there is absolutely no evidence that Weiser was attempting to mislead the Supervisors in any way. Weiser claims the issue of the boundaries was resolved. However, even if the boundaries were not resolved, the Supervisors did not preserve the issue because they failed to mention it in their conditional approval.

## CONCLUSION

For all the above-stated reasons, we affirm the trial court order vacating the decisions of the Supervisors and directing them to approve Final Subdivision Plans 1 and 2.

---

garding zoning issues. Under *Annand*, zoning issues are not hereby decided. Any issues pertaining to zoning must be addressed when

either Weiser or the purchasers of his lots seek permits required by the Township's Zoning Ordinance.

## ORDER

AND NOW, this 21st day of November, 2008, the order of the Court of Common Pleas of Adams County dated December 7, 2007, is AFFIRMED.