**Lyons BOROUGH and Lyons Borough Municipal Authority, Appellants**

**v.**

**TOWNSHIP OF MAXATAWNY, and Apollo Point, L.P. and Saucony Creek, L.P.**

Commonwealth Court of Pennsylvania.

Argued June 18, 2015.

Decided July 13, 2015.

Joan E. London, Wyomissing, for appellants.

Matthew J. Crème, Jr., Lancaster, for appellee Township of Maxatawny.

Sean E. Summers, York, for appellees Apollo Point, L.P. and Saucony Creek, L.P.

BEFORE: DAN PELLEGRINI, President Judge, BERNARD L. McGINLEY, Judge (P.), and P. KEVIN BROBSON, Judge.

OPINION BY President Judge DAN PELLEGRINI.

Lyons Borough (Borough) and Lyons Borough Municipal Authority (LBMA) appeal the order of the Berks County Court of Common Pleas (trial court) denying their appeal of the Township of Maxatawny's (Township) approval of the Final Land Development Plan (Final Plan) submitted by Apollo Point, L.P. (Apollo Point) and Saucony Creek, L.P. (Saucony Creek) (collectively, Landowners) under the Pennsylvania Municipalities Planning Code (MPC)[1] and the Township's Subdivision

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202. As the Supreme Court has explained:

Section 508 of the [MPC], 53 P.S. § 10508, prescribes the procedure for obtaining approval of a proposed development plan. An application for both a preliminary and final plan must be made to the governing body. [In Section 107(10), t]he governing body is defined as a ... board of supervisors. 53 P.S. § 10107(10).... Once a preliminary application has been approved,

and Land Development Ordinance (SAL-DO). We reverse.

This is the latest in a series of actions in which the Borough and LBMA are contesting Landowners' attempt to develop a 192-unit apartment complex on two contiguous parcels of property in the Township totaling approximately 37.7 acres zoned for multi-family housing. In December 2012, a Preliminary Land Development Plan (Preliminary Plan) was filed with the Township's Board of Supervisors (Board) to construct the complex composed of four buildings with two and four bedroom units, as well as a clubhouse. The plan included a sewage flow estimated by a consulting engineer of 26,942.96 gallons per day at full occupancy.

LBMA, the Township and the Township's Municipal Authority (Authority) entered into agreements under which the Authority would provide sanitary sewage collection and treatment and the Township purchased a total of 50,000 gallons of average daily flow into LBMA's treatment plant. At the time of preliminary approval, the Township was using a peak sewage flow of 21,150 gallons per day with a remaining available capacity of 28,850 gallons of flow per day. In December 2012, Landowners entered into an agreement with the Authority to use its remaining sewage flow capacity for the development.

In March 2013, the Board granted conditional approval of the Preliminary Plan subject to 161 conditions relating to: compliance with the sections of the SALDO relating to storm water management; sanitary sewer system and water distribution system requirements; and compliance with additional zoning ordinance and SALDO requirements as well as additional required approvals by the Berks County Planning Commission (Planning Commission), the Berks County Conservation District (BCCD), the Department of Environmental Protection (DEP), the Department of Transportation (DOT), and the Township's Solicitor.

LBMA appealed the Board's conditional approval to the trial court, alleging that the Board erred in approving the Preliminary Plan because there was insufficient sewage for the development and there is no agreement to purchase increased capacity. LBMA also alleged that there is no agreement for connection to the sewer main; no easement across neighboring property for the connection to the sewage system; no provision for connection to its public water system; and there is no agreement with LBMA for connection to that system. The trial court dismissed LBMA's appeal and affirmed the Board's decision and this Court affirmed on further appeal. *See Lyons Borough Municipal Authority v. Township of Maxatawny,* 2014 WL 3396538 (Pa.Cmwlth. No. 1961 C.D.2013, filed July 10, 2014).

In June 2013, while the appeal from the Preliminary Plan approval was pending, the Board approved Landowners' Final Plan [2] conditioned on demonstrating com-

---

the application is entitled to final approval in accordance with the original preliminary application. Thus, final approval of a subdivision plan is automatic unless the final plan is different from the preliminary plan. Significantly though, § 508(4) does permit the *governing body* to place conditions upon the approval of either the preliminary or final plan with the applicant's acceptance.

*Graham v. Zoning Hearing Board of Upper Allen Township,* 520 Pa. 526, 555 A.2d 79, 81 (1989) (emphasis in original).

2. Section 207.4 of the Township's SALDO states, in relevant part:
 The Final Plan shall be reviewed in accordance with the procedures as required under ... these regulations, for Preliminary Plans. In addition: (a) Before acting on any subdivision Plan, the governing body

pliance with comments in three review letters from: the Township's Zoning Enforcement Officer, Christopher Paff (Paff);[3] the Township Representative with Keystone Consulting Engineers, Inc., Roy J. Stewart (Stewart);[4] and a Planner II

> may, but shall not be required to, hold a public hearing thereon after public notice: (b) If the Township Supervisors approve the Final Plan, it shall be signed by the chairman and the secretary, together with the date of such action; (c) A performance guarantee or a certificate of satisfactory installation ... shall be required before Plans are released for recording.
>
> (Reproduced Record (RR) at 433a).

3. Paff indicated that "[t]he above referenced plans appear to be in general conformance with the Township Zoning Ordinance of 2012." (RR at 412a).

4. The deficiencies outlined in Stewart's letter are as follows:

> COMMENTS:
> 1. The General Plan Notes 1 to 10 shown on Sheet D–01, are repeated on Sheet D–02. The General Plan Notes on Sheet D–01 should be removed. Sheet D–02 should be re-titled as General Plan Notes and Sheet D–01 just Cover Sheet. The first four sheets should be recorded. Revise the Plan Sheet Schedule on Sheet D–01 to note the four sheets that will be recorded.
> 2. On Sheet D–02 Note 14 a street name will be provided. The name should be provided for Township approval prior to final plan approval. (SALDO Section 302.1.m.2).
> 3. Sheets D–03 and D–04 should be retitled Site Plan 1 and Site Plan 2.
> 4. Provide an overlay of the detention and infiltration basin on Sheets D–09 and D–10.
> SANITARY SEWER:
> 5. What is the status of the DEP Sewage Planning Modules?
> 6. On Sheet D–07, a sanitary sewer easement will be required across Alan and Donna Schwoyer's property. Who will secure this easement? Who will own the sewer line within this easement?
> 7. The sanitary sewer connection to the existing sewer shown on Sheet D–07 will be by a manhole. The type of connection doghouse manhole or a new precast manhole by cutting the pipe and re-connecting with sleeves will be determined when the type of the existing sewer pipe is known.

> Label pipe size and type for the existing segment between manhole 122–3 and manhole 122–2, Sheet D–07.
> WATER:
> 9. This development will be served by public water connecting to an existing line in Roja Road.
> 10. The water main within the development shall be privately owned and maintained. The plans should indicate where ownership is public and where it is private.
> 11. To assure the proper sizing of water lines within the development, the developer shall perform a fire flow test near the connection point of the development's water lines to the existing water system. The test results shall be used to calculate pressures under fire flows plus maximum day demands.
> 12. Fire hydrant locations shall be reviewed and approved by appropriate fire officials serving the Township.
> 13. The water tie-in detail was removed from Sheet D–08. Please revise and add a meter vault detail.
> 14. A GP–5 stream crossing permit may be required for water main crossings of the Waters of the Commonwealth. Please provide all correspondence regarding a permit application.
> STORM WATER
> 15. (SALDO Section 408.1(g)) The following comments pertain to the Saucony Creek Storm Water Management Ordinance (Ordinance No. 7 of 2008) and are referenced by sections of that ordinance:
> a. (Sections 301.F, 306.D and 311.B.2) A Stream Buffer Easement extending a minimum fifty (50) feet to either side of the top-of-bank of the channel may be required by [BCCD] and/or [DEP].
> b. (Sections 301.G, 303, 306.E, 403.A.4, 403.B.20, and 403.C.2) An Erosion and Sediment Control Plan shall be prepared. In addition any necessary permits and/or approvals required from [DEP] and [BCCD] shall be obtained.
> c. (Section 305.A.1.a) The tributary area to the infiltration basin shall meet the groundwater recharge requirements by the NPDES Permit.
> d. (Section 305.A.2.d) Storm water treatment shall be provided for storm water entering CB–116.

with the Planning Commission, Jamie L. Passon (Passon).[5] In June 2013, the

e. (Section 306.A) Please provide specifications for the proposed SNOUT devices.

f. (Section 310.C.2.o) This discharge from EW–101 will discharge directly into an existing watercourse. The proposed swale shall be designed for capacity to convey runoff from the 100–year storm and stability. Provide additional rip-rap stone in the proposed swale.

g. (Section 311.B(4)) The storm water calculations should also take into account junction loss as a result of the proposed SNOUT devices.

h. (Section 311.C.2) Storm sewer conveyance calculations that were included in the prior submission have not been provided with this submission. This shall be included for review. In addition, capacity calculations shall be provided for the proposed roof leaders.

16. It does not appear that the orifice opening for ES–102 is provided for in the storm water pond report calculations.

17. Please provide supporting information for the sizing of the emergency spillway openings for the detention and infiltration basins.

OUTSIDE AGENCIES REVIEWS AND APPROVALS:

18. Act 247 (PA Municipalities Code) Review: The [Planning Commission] must review and comment on this project.

19. The Erosion and Sedimentation Control Plan and Narrative must be submitted, reviewed and approved by the [BCCD].

20. NPDES review and permit by the BCCD and/or DEP.

21. [DOT] review and approval of the Highway Occupancy Permit for the access onto Lyons Road.

22. The Solicitor should prepare and/or comment on all agreements, easements, deed restrictions, and deed covenants prior to final plan approval.

(RR at 414a–416a).

5. The deficiencies outlined in Passon's letter are as follows:

B. General Planning Comments:

1. A highway occupancy permit will be needed for all utility work and/or grading proposed within the [DOT] right-of-way along S.R. 1021.

2. A Transportation Impact Study should be conducted to indicate the impact the development will have on Lyons Road (S.R. 1021). The developer should be required to take actions to mitigate any problems.

3. The proposal involves too many units with only one source of vehicular access. An emergency access point should be considered as part of the over-all design.

4. The plan should provide the appropriate ADA ramps at the appropriate parking spaces and at crosswalks throughout the site.

5. The plan identifies the proposed locations of the trash enclosures. The proposed locations should be reviewed with regard to truck accessibility to the trash enclosure sites and adequate truck maneuverability through the facility. Does the proposal provide an adequate number of containers for the number of units provided on the site?

6. The township should be satisfied with the proposal's stormwater management system prior to plan approval. The proposal should meet the requirements of the approved Act 167 Stormwater Management Plan for the Saucony Creek Watershed.

7. Staff is concerned that the area is prone to sink holes. Testing of the area by a qualified geologist is recommended.

8. The township should be satisfied with the proposed grading prior to plan approval.

9. The local sewer authority and water authority should review the proposal relative to public sewer and water service/supply needs.

10. A delineated easement should be provided for the proposed sanitary sewer line extension from the existing main (MH–103 to MH–103) that crosses the adjacent lands of 'Arlan & Donna L. Schwoyer.'

11. If an easement is needed for the proposed water line extension, the final plan should provide that easement with its associated bearings and distances.

12. Ownership and maintenance responsibilities should be provided for the public sanitary sewer main/line, the public water supply and the stormwater management facilities.

13. The plan identifies the location of three (3) existing wells. Staff questions the purpose and the importance of these wells with regards to the [LBMA]'s pumping station, storage tank and well location located

Township's Manager acknowledged that Landowners had already submitted or may submit future revised plans concerning these comments.[6]

The Borough and LBMA appealed the conditional approval of the Final Plan to the trial court, arguing that the conditions attached to the Preliminary Plan approval had not been satisfied and that the Final Plan as submitted does not comply with the requirements of the Township's SALDO and Zoning Ordinance.[7] The trial court found that the Township approved the Final Plan with the same conditions cited in the Preliminary Plan approval, and that Landowners had already complied with some of the conditions and agreed to comply with the remaining conditions. The trial court concluded that, as a result, the Township correctly conditionally approved the Final Plan. *See Weiser v. Latimore Township*, 960 A.2d 924, 930 (Pa. Cmwlth.2008), *appeal denied*, 601 Pa. 705,

973 A.2d 1008 (2009) (final approval of a subdivision plan is automatic unless the final plan is different from the preliminary plan). (Trial Court 10/24/14 Opinion at 4). The trial court also found that the Borough's and LBMA's calculation of the necessary sewage capacity was not based on facts as they exist. The trial court denied the appeal and affirmed the Board's order because this is an issue between the Borough and LBMA and the Township which may be the subject of a contract dispute, but it is not a basis to reject Landowners' Final Plan.

 The Borough and LBMA then filed this appeal again, arguing that the Township erred in approving the Final Plan because Landowners have not met the conditions imposed on Landowners in the Preliminary Plan approval.[8]

 A conditional approval of a final plan has been expressly recognized by the MPC. Section 503(9) of the MPC, provides:

on the west side of Lyons Road. The plan should note the purpose of the existing wells.
14. Consideration should be given to providing 'security' lighting around the back sides of the buildings.
15. We recommend that the proposed Light Plan (plan sheet D-08) be reviewed against the proposed Landscape Plan (plan sheet D-09) to ensure that the site's proposed lighting does not get lost in the trees.
C. Standard Planning Comments—refer to attachment.
 The [Planning Commission] will review any additional submission of this plan at the request of the municipality. After municipal approval of the plan for recording, *a minimum of two prints* **should be delivered to the [Planning Commission] for signature**.... The applicant has 90 days to record the plan after the governing body approves the plan at a public meeting....
(RR at 417a–419a) (emphasis in original).

6. The trial court found that this statement was necessary because all of the comments concerned the initial Preliminary Plan, and the Township only has each reviewing entity

write one review letter in the course of the plan process, and no other letter from the reviewing entities is issued to correct errors and misunderstandings in the letters or to acknowledge comments that were already satisfied by Landowners. (Trial Court 10/24/14 Opinion at 2–3).

7. No challenge was filed to LBMA and the Borough's standing to appeal the approval of the Final Plan. LBMA's appeal maintained that it is the owner of water rights on the subject property and the Borough alleged that it is an adjacent property owner, and that the proposal will create a discharge of stormwater, or an increased discharge of stormwater, over its land. East Penn Manufacturing Co., Inc. intervened in the appeal but is not a party in this appeal.

8. Where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Weiser*, 960 A.2d at 929 n. 9. A governing body commits an abuse of discretion when its findings of fact are not supported by substantial evidence. *Id.*

The subdivision and land development ordinance may include, but need not be limited to:

\* \* \*

(9) Provisions for the approval of a plat, whether preliminary or final, subject to conditions **acceptable to the applicant and a procedure for the applicant's acceptance or rejection of any conditions** which may be imposed, including a provision that approval of a plat shall be rescinded automatically upon the applicant's failure to accept or reject such conditions within such time limit as may be established by the governing ordinance.

53 P.S. § 10503(9) (emphasis added).

 As evidenced by this provision, the conditions must be agreed to by the applicant and involve such things as road improvement and open space as well. *See Graham,* 555 A.2d at 81 ("[Section] 508(4) does permit the *governing body* to place conditions upon the approval of either the preliminary or final plan with the applicant's acceptance . . . .") (emphasis in original).[9] Attaching a "condition" that they must have approvals as required by law are in a sense not a "condition" that the municipality imposes because it has no discretion to change or waive that requirement.

 While the Township may impose conditions on the approval of a Final Plan, that power is not unlimited. In *Bloom v. Lower Paxton Township,* 72 Pa.Cmwlth. 532, 457 A.2d 166, 169 (1983), we stated that when a municipality grants final plan approval subject to issues of required state permits, the approval "reflects the fact that the developer has satisfied the municipality's land use requirements, and is in conflict only with regulations of a state agency," and that "any legal dispute regarding the issuance of the permits should involve the developer and the agency, not the municipality."[10] A final plan can be

---

**9.** *See also* Section 508(4)(i) of the MPC, 53 P.S. § 10508(4)(i) ("[W]hen a preliminary application has been approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided."); *Graham,* 555 A.2d at 81 ("Once a preliminary application has been approved, the application is entitled to final approval in accordance with the original preliminary application. Thus, final approval of a subdivision plan is automatic unless the final plan is different from the preliminary plan.").

**10.** Section 209.1 of the Township's SALDO provides:

> Conditional Plan approval shall be valid for a period of six (6) months. If all conditions of the Plan approval are not satisfied within the six-month period, the Plan shall be deemed to be rejected. Extensions of the six-month period shall only be considered by the Board of Supervisors if the request is submitted to the Township in writing and sets forth the progress to date on satisfying said conditions of Plan approval.

(RR at 434a).

Additionally, Section 208.2 of the Township's SALDO states that "[a]fter approval by the Township Supervisors and the [Planning Commission], and with all endorsements indicated on the copy, the Subdivider shall record this Plan. No Subdivision Plan may be legally recorded unless it bears the Township and County approval and seal and until all conditions of conditional approval are satisfied." (*Id.*).

Moreover, Section 208.4 of the Township's SALDO states:

> The Subdivider shall file the Record Plan with the County Recorder of Deeds within ninety (90) days of the date of final approval by the Township Supervisors. . . . If the Subdivider fails to record within such period, the action of the Township Supervisors and Township Planning Commission shall be null and void unless an extension of time is granted in writing by the Township Supervisors after written request to do so by the Subdivider.

(*Id.* at 433a–434a).

approved once the conditions of its SALDO have been complied with because there is no need to delay granting final approval because the municipality has exercised all of the discretion over all matters over which it had discretion. *See Morris v. South Coventry Township Board of Supervisors,* 898 A.2d 1213 (Pa.Cmwlth.2006).

 As the trial court noted in this case, the Township approved the Final Plan with the same conditions cited in the Preliminary Plan. The Stewart and Passon letters (*see* footnotes 4 & 5) setting forth the conditions involve noncompliance with the Township's Zoning Ordinance and SALDO. The approval of a Final Plan is a finding that the developer has satisfied the Township's laws and there is nothing else for it to do. Because it is final, developers and objectors can decide whether the municipality has exercised its discretion properly and, if they so desire, appeal.

If we said that all the conditions in a preliminary plan could be made conditions for the final plan as Landowners and the Township suggest, there would be no difference between the preliminary plan, where the developer obtains certain rights to go ahead with the development if he satisfies certain conditions, and the final plan, where it is ascertained whether those conditions can be met. Simply, a final plan would not be final until some later date when the municipality determines whether the conditions have been satisfied or not, which could be well after the time has expired for both the developer and the objectors to appeal the final plan.

Accordingly, because Landowners' Final Plan admittedly had not complied with the Township's Zoning and/or SALDO, the trial court's order is reversed.

### ORDER

AND NOW, this *13th* day of *July,* 2015, the order of the Court of Common Pleas of Berks County, dated August 12, 2014, at No. 13–17003, is reversed.