IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Regis H. Nale, Louis A. Mollica :
and Richard E. Latker, :
              Appellants :
               :
          v. : No. 2008 C.D. 2015
            : Submitted: July 15, 2016
Hollidaysburg Borough and :
Presbyterian Senior Living :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: September 28, 2016


      Regis H. Nale, Louis A. Mollica and Richard E. Latker (collectively, Objectors) appeal *pro se* from an order of the Court of Common Pleas of Blair County (trial court) sustaining the preliminary objections of Hollidaysburg Borough (Borough) and Presbyterian Senior Living and dismissing Objectors' appeal on the basis that their appeal had been untimely filed.


**I.**

      In 2013, Presbyterian Senior Living purchased a building located at 201 Jackson Street, Hollidaysburg, Blair County, Pennsylvania (Property), which was in a Residential-Only District (R2) and was being utilized by the

Hollidaysburg Area School District (School District) as its administrative offices. After the School District moved its administrative offices, Presbyterian Senior Living submitted development plans to the Borough and requested: 1) that the Borough abandon an alley that existed between the former School District administration offices and the existing nursing home of Presbyterian Senior Living, and 2) that the Borough rezone the former School District administrative offices from an R2 District to a Residential Business (RB) District to make it the same zoning designation as the nursing facility.

The rezoning request was submitted to the Blair County Planning Commission and the Hollidaysburg Planning Commission (Planning Commission) for review. Because there were so few parcels located in the area to be left as R2, the Borough also rezoned those parcels to RB.[1] Notices of a public hearing to be held on March 12, 2015, on the application to rezone the parcels were posted and published. The public hearing was held as scheduled, and Objectors Nale and Latker were present and spoke their objections during the public comment section. The Borough Council approved the rezoning.[2]

---

[1] A total of 19 parcels were to be rezoned, of which three were owned by Presbyterian Senior Living, one was owned by a nearby corporation, and the remaining 15 parcels were owner-occupied single-family homes.

[2] Section Two of Ordinance No. 869, the Ordinance that governs the rezoning, states its Purpose as:

> The Borough Council of Borough of Hollidaysburg deems it appropriate in the furtherance of the purposes of the "Hollidaysburg Borough Zoning Ordinance" to amend said [Borough Zoning] Ordinance by redefining certain boundaries of the "Official Zoning Map" in order to make changes, in certain

**(Footnote continued on next page…)**

Following the rezoning approval, Presbyterian Senior Living sought conditional use approval "to construct a new group residence addition to [its] existing group residence along Newry and Jackson Streets in the Borough." (Reproduced Record (R.R.) at 248.)  The proposal included:

> [The construction of] an approximately 75,000 square-foot facility with three stories and 41 dwelling units plus support spaces.  Site improvements include construction of a small parking area, drop-off loop, utility extensions, sidewalks, landscaping, and storm water management facilities.  Some of the parking will be included under a portion of the building.

(*Id.* at 248.)  Along with the application, Presbyterian Senior Living also included a lot merger plan to combine the parcels that were rezoned to RB into one property for the proposed facility which required a land development plan.[3]

_____

**(continued…)**

> zoning districts delineated by said Map.  The purpose of this Ordinance [Amendment] is to redefine said districts by changing the boundaries of the said districts on said Map as set forth in Section Three hereof.

(Reproduced Record (R.R.) at 200.)

[3] Under Chapter 22, Section 201 of the Holliday Ordinance a "land development" is defined as any of the following:  "(1) The improvement of one lot or two or more contiguous lots, tracts or parcels or land for any purpose involving (a) A group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure. (b) The division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features. (2) A subdivision of land." Chapter 22 "Subdivision and Land Development" of Hollidaysburg Ordinance at **(Footnote continued on next page…)**

On June 2, 2015, the Planning Commission recommended conditional approval of Presbyterian Senior Living's land development plan, titled "Preliminary/Final Land Development Plan," that included the lot merger plan as well as the off-street parking reduction request. During its meeting on June 11, 2015, the Borough Council declined to approve the land development plan because the Planning Commission had not made a final decision regarding its approval on the parking requirements. Then, at its July 2015 meeting, finding that it had already approved the request for alternative parking at its previous meeting, the Planning Commission approved the land development plan. On August 13, 2015, the Borough Council approved the land development plan but did not decide the off-street parking request, which it continued to its September meeting. At each of these meetings, at least one Objector was present and voiced objections.

## II.

On August 26, 2015, Objectors, residents of Hollidaysburg, then filed a petition for a preliminary injunction, requesting a hearing and seeking to, *inter alia*, suspend the land development permit "pending a full and lawful assessment of the project in accordance with Chapter 22 of the Hollidaysburg Code of Ordinances [Hollidaysburg Ordinance]," and obtain a finding that the rezoning and lot merger were unlawful and without effect. (*Id.* at 4.) Following a hearing, the trial court ordered Objectors to file a complaint because the court "simply cannot

---

**(continued…)**

http://www.blairco.org/HollidaysburgBorough/Documents/Chapter_22.pdf (last visited August 23, 2016).

4

make any ruling on any request for a preliminary or special injunction without the filing of a [c]omplaint." (*Id.* at 289.)

On September 14, 2015, Objectors filed a complaint seeking declaratory judgment and injunctive relief, averring, *inter alia*, various misrepresentations, falsities and unlawful actions relating to the Borough Council meetings, the rezoning and the land development plan. Objectors also averred that the Borough's approval of the land development plan violated Chapter 22, Sections 303, 304, 305, 403 and 404 of the Hollidaysburg Ordinance because two separate submissions, a "preliminary" plan and a "final" plan, were not made for approval, but rather, the land development plan was unlawfully condensed into one submission. Presbyterian Senior Living and the Borough filed preliminary objections alleging procedural deficiencies in the complaint and averring that the complaint failed to assert a cognizable cause of action.

After holding a hearing in the form of a status conference to address the preliminary objections, the trial court sustained the preliminary objections and dismissed Objectors' complaint and their petition for injunction. The trial court found that Objectors had failed to file a timely appeal of the Borough's approval on March 12, 2015, of the rezoning petition and the August 13, 2015 approval of the land development plan as required by Section 1002-A(a) of the Pennsylvania Municipalities Planning Code (MPC)[4] which provides, in pertinent part:

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101–11202. Section 1002–A(a) of the MPC, *added by* the Act of December 21, 1988, P.L. 1329, 53 P.S. §11002–A(a).

> [An appeal] shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after entry of the decision as provided in 42 Pa.C.S. § 5572 (relating to time of entry of order).... It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the 30-day limitation in this section should be applied in all appeals from decisions.

53 P.S. §11002–A(a).

The trial court further reasoned that even if Objectors' challenge of the Borough's approval of the land development plan was timely, Objectors failed to assert a cognizable claim because "in reading [Sections] 303-305 [of the Hollidaysburg Ordinance] together, these ordinances demonstrate that a consolidated land development plan is not expressly prohibited where the preliminary plan is approved without subsequent conditions and the subdivider or developer satisfies the conditions within [Section] 305(1)...." (September 30, 2015 Trial Court Opinion at 6.) This appeal followed.[5]

---

[5] In reviewing a trial court's order sustaining preliminary objections to a complaint, we are limited to determining whether the trial court erred as a matter of law or committed an abuse of discretion. *Bussinger v. Dyne*, 76 A.3d 137, 140 n.6 (Pa. Cmwlth. 2013), *appeal denied*, 74 A.3d 1186 (Pa. 2014). In doing so, we must accept as true all well-pled facts and all inferences reasonably deducible therefrom. *Id.*

6

## III.

## A.

On appeal, Objectors do not contend that they filed a timely appeal of the Board's decision of March 12, 2015, to rezone the Property. Instead, citing *Schadler v. Zoning Hearing Board of Weisenberg Township*, 850 A.2d 619 (Pa. 2004), they argue that the Borough's March 12, 2015 decision to rezone was *void ab initio* because their due process was violated before the decision was made, making the 30-day appeal period limitation under the MPC inapplicable. They apparently contend that their due process rights were violated because during the March 12, 2015 meeting, "an ostensibly official government zoning map misrepresenting the existing zoning boundaries was circulated." (Appellants' Brief at 23.)

In *Schadler,* our Supreme Court concluded that an ordinance was *void ab initio* because the municipality did not comply with statutory notice requirements prior to the ordinance's enactment. Because the ordinance was not properly enacted, there was no effective date from which the 30-day appeal period could begin running, making any procedural challenge thereto not time-barred. However, our "Supreme Court has limited the application of the *void ab initio* doctrine to circumstances implicating notice, due process, or other constitutional rights of a party." *Falkler v. Lower Windsor Township Zoning Hearing Board*, 988 A.2d 764, 767 (Pa. Cmwlth. 2010). *See also* Section 1002-A of the MPC, 53 P.S. §11002–A.

7

Because the circulation of a purported incorrect zoning map at the hearing does not implicate any of those factors, the *void ab initio* doctrine does not apply. So even if we were to hold that the filing of the preliminary injunction request of August 26, 2015, served as an appeal, it was untimely because it was filed much more than 30 days after the March 12, 2015 rezoning decision.

**B.**

As to whether Objectors' challenge to the Borough Council's August 13, 2015, approval of the land development is timely, that requires us to address whether the preliminary injunction request of August 26, 2015, served as an appeal. If it did, the appeal was timely because it was filed within 30 days of the Borough Council's approval of the land development plan.

Section 708(c) of the Judicial Code provides that:

> If a **complaint** in the nature of **equity, mandamus, prohibition, quo warranto or other original process** is commenced in any court against a government unit . . . objecting to a governmental determination by any of them, where the proper mode of relief is an appeal from the determination of the government unit, this alone shall not be a ground for dismissal, but the papers whereon the process against the government unit . . . was commenced shall be regarded and acted on as an appeal from such determination of the government unit and as if filed at the time such process was commenced.

42 Pa.C.S. §708(c) (emphasis added).

8

Section 708(c) permits any action that was commenced by the filing of the complaint to serve as a timely appeal from a government action. In this case, the Borough granted the land development permit on August 13, 2015, and Objectors filed their petition for preliminary injunction on August 26, 2015. However, the petition for preliminary injunction is not a complaint in equity as required by the above provision. A petition for preliminary injunction can only be filed after a complaint in equity has been filed and cannot, in any way, be considered to be "original process." Objectors had 30 days from August 13, 2015, or September 12, 2015, to file their complaint in equity. Objectors filed their complaint in equity on September 14, 2015; however, because September 12, 2015, was a Saturday, under Section 1908 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1908, the statutory deadline would be extended to the next business day, which is September 14, 2015.[6] Because Objectors' complaint in equity was filed within 30 days of Council's approval of the plan, it acted as an appeal of that decision.[7]

---

[6] Section 1908 of the Statutory Construction Act of 1972 provides:

> When any period of time is referred to in any statute, such period in all cases, except as otherwise provided in section 1909 of this title (relating to publication for successive weeks) and section 1910 of this title (relating to computation of months) shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.

1 Pa.C.S. §1908.

[7] Where the trial court takes no additional evidence, our review in a land development appeal is limited to determining whether the local governing body committed an error of law or
**(Footnote continued on next page…)**

9

## C.

Because Objectors' complaint acted as an appeal from the approval of the final consolidated land development plan, the issue then is whether the approval of the "Preliminary/Final Land Development Plan" was proper or did the Borough have to approve the preliminary plan first and, at a separate date, approve the final plan. Objectors specifically contend that separate approvals of the land development plan are required by Chapter 22, Sections 303, 304 and 305 of the Hollidaysburg Ordinance.

Section 303 of the Hollidaysburg Ordinance, titled, "Official Submission of the Preliminary Plan," provides:

> 1. Submission of Plans. The applicant shall submit 15 copies of the preliminary plan and all information relating thereto to the Borough staff who shall forward copies to the Borough Planning Commission and Council and other appropriate agencies/persons for review.
>
> 2. County Planning Review. Upon receipt of duly filed application, the Borough shall forward a copy to the county planning agency for review. The Borough shall not approve any application until the county's review is received or until 30 days following the date the application was sent to the county. Any review fees required by the county shall be paid by the applicant.

---

**(continued…)**

an abuse of discretion. *Robal Associates, Inc. v. Board of Supervisors of Charlestown Township*, 999 A.2d 630 (Pa. Cmwlth. 2010).

10

(Chapter 22 "Subdivision and Land Development," Section 303 of Hollidaysburg Ordinance.)[8]

Section 304, titled, "Review of the Preliminary Plan," states:

1. The Borough staff shall review the plans and submit a report to the Planning Commission.  The staff shall also be responsible for obtaining reviews, as applicable, from other governmental agencies and forwarding such information to the Planning Commission.

2. The Planning Commission shall review the plan in accordance with the requirements of this Chapter, considering the recommendations of the above-mentioned agencies.  Within 40 days after the filing of the preliminary plan, the Commission shall recommend whether the preliminary plan shall be approved, approved with modifications or disapproved.  The Commission shall notify the applicant and Borough Council in writing of its findings and recommendations.

3. Borough Council shall review the proposed plan and shall act upon the preliminary plan application with[in] 90 days of the official filing date.  Failure to do so shall be deemed an approval.  Before acting upon a preliminary plan, Borough council may hold a hearing thereon after public notice.

4. Borough Council shall notify the applicant of its decision to approve, approve with conditions, or disapprove the preliminary plan in writing.  Such notice shall be given to the applicant in person or mailed to the

---

[8] Chapter 22 "Subdivision and Land Development" of Hollidaysburg Ordinance at http://www.blairco.org/HollidaysburgBorough/Documents/Chapter_22.pdf (last visited August 23, 2016).

address shown on the application within 15 days of the decision by Council.

5. If the plan is approved with conditions or disapproved, Council shall specify in their notice the conditions which must be met and/or the defects found in the plan, including specific reference to provisions of any statute or ordinance which have not been fulfilled.

6. If the plan is approved with conditions, the applicant shall have 30 days from the date of notification to either accept or reject the conditions and so notify Council. If the applicant fails to act within this time period, the plan approval shall be rescinded automatically.

7. Approval of the preliminary plan shall constitute approval of the subdivision or land development plan as to the character and intensity of development, the arrangement and approximate dimensions of streets, lots, and other planned features. The approval binds the applicant to the general scheme of the development shown, unless a revised preliminary plan is submitted, and permits the applicant to proceed with final detailed design improvements and to prepare the final plan. Approval of the preliminary plan does not authorize the sale of lots nor recording of the preliminary plan.

8. The preliminary plan approval shall stipulate the date by which application for final plan approval must be submitted. Where the development is proposed to be completed in phases or stages, the preliminary approval shall include a timetable for the submission of the final plans for the various phases.

(Chapter 22 "Subdivision and Land Development," Section 304 of Hollidaysburg Ordinance.)[9]

Finally, Section 305, titled, "Submission of the Final Plan," provides:

> Upon approval of the preliminary plan, the applicant shall submit a final plan in accordance with the time periods specified by the preliminary plan approval. If the applicant does not do so, the preliminary plan shall be nullified unless a written time extension is approved by the Borough Council. The final plan must conform to the general scheme of the "preliminary plan" as approved and must contain the information specified in Part 4, §404. [Ord. 648]
>
> 1. Provisions for "Final Plan" Approval – Before requesting "final plan" approval, the subdivider or developer must:
>
>     A. Submit one of the following to the Borough: [Ord. 648]
>
>         (1) a certificate that all improvements and installations to the subdivision or development required by these regulations have been made; or
>
>         (2) a bond, certified check or other security in compliance with §606 of Part 6 of this Chapter. [Ord. 648]
>
>     B. Include on his plans and drawings all the improvements required in Part 6, §602.

---

[9] Chapter 22 "Subdivision and Land Development" of Hollidaysburg Ordinance at http://www.blairco.org/HollidaysburgBorough/Documents/Chapter_22.pdf (last visited August 23, 2016).

C. Agree that at the time each improvement is to be installed, as well as upon its completion, the subdivider or developer will notify the Borough so that adequate inspections can be made. [Ord. 648]

2. Number of Copies; Payment of Fees. The applicant shall submit a reproducible original of the plans, five copies of the final subdivision or land development plans and at least three copies of all other required information. [Ord. 648]

(Chapter 22 "Subdivision and Land Development," Section 305 of Hollidaysburg Ordinance.)[10]

We agree with the trial court that nothing in those provisions prohibit approving both plans at the same time when a plan is approved without conditions. Under Chapter 22, Section 304(7), the approval of the preliminary plan constitutes the approval of the subdivision or land development plan. That approval can be made with conditions and does not authorize the recording of the subdivision. In this case, the preliminary plan imposed no conditions. When that occurs, because there is no difference between the preliminary plan and final plan, the final approval of a subdivision plan by the Borough is automatic. *See Graham v. Zoning Hearing Board of Upper Allen Township*. 555 A.2d 79 (Pa. 1989); *Borough v. Township of Maxatawny,* 123 A.3d 347 (Pa. Cmwlth. 2015). Because nothing in Sections 303 through 305 of the Hollidaysburg Ordinance require that the Borough approve a preliminary land development plan separate from a final land

---

[10] Chapter 22 "Subdivision and Land Development" of Hollidaysburg Ordinance at http://www.blairco.org/HollidaysburgBorough/Documents/Chapter_22.pdf (last visited August 23, 2016).

development plan, the trial court properly found that the Objectors' argument was without merit.

Moreover, Objectors' argument that the approval violated Chapter 22, Sections 403 and 404 of the Hollidaysburg Ordinance is similarly without merit. Those provisions provide specifications with regard to the drawing of the preliminary plan and the final plan, respectively, and the specifics that must be included. Nothing in either provision requires separate approvals of the land development plan, not to mention that Objectors do not specify any further deficiencies in the submission of the land development plan with respect to the sections they outlined in their complaint.

Accordingly, transforming their complaint in equity to a statutory zoning appeal, we affirm the trial court's holding that nothing in this case precludes the trial court from approval of the preliminary plan and final plan together.[11]

_____
DAN PELLEGRINI, Senior Judge

---

[11] Based on our disposition of this matter, we need not address Objectors' remaining arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Regis H. Nale, Louis A. Mollica : 
and Richard E. Latker, : 
          Appellants : 
           : 
          v. : No. 2008 C.D. 2015
           : 
Hollidaysburg Borough and : 
Presbyterian Senior Living : 

# **O R D E R**

AND NOW, this 28<u>th</u> day of  <u>September</u>, 2016, the order of the Court of Common Pleas of Blair County, dated September 30, 2015, at No. 2015 GN 2628, is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Regis H. Nale, Louis A. Mollica : 
and Richard E. Latker, : 
          Appellants : 
          : No. 2008 C.D. 2015
          v. : 
          : Submitted: July 15, 2016
Hollidaysburg Borough and : 
Presbyterian Senior Living : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

DISSENTING OPINION BY
JUDGE McCULLOUGH                  FILED: September 28, 2016

        I respectfully dissent because I believe that the Court of Common Pleas of Blair County (trial court) erred in sustaining the preliminary objections filed by Hollidaysburg Borough (Borough) and Presbyterian Senior Living (PSL) in response to a complaint filed by Regis H. Nale, Louis A. Mollica, and Richard E. Latker (collectively, Objectors).

        As the Majority notes, Objectors argue that the Borough Council's March 12, 2015 decision to rezone all of the properties in their neighborhood from an R2 District to a Residential Business District was *void ab initio* because their due process rights were violated before the decision was made, thereby tolling the

30-day appeal period under section 1002-A(a) of the Pennsylvania Municipalities Planning Code (MPC).[1]  The Majority identifies the purported due process violation solely as the circulation of "an ostensibly official government zoning map misrepresenting the existing zoning boundaries" at the Borough Council's March 12, 2015 public hearing.  (Objectors' brief at 23.)  The Majority then summarily concludes that such a violation does not implicate due process.

However, the presentation of this zoning map was not the sole due process violation alleged by Objectors.  Rather, the zoning map issue was merely a single part of a larger scheme that Objectors alleged was designed to mislead the public and essentially rubber-stamp the development plans of a single corporate entity, PSL.  In addition to the issue regarding the zoning map, Objectors raised issues concerning: PSL's misrepresentation of its development project as a group residence to obtain more favorable setbacks, lessen the required green space, and reduce its off-street parking requirements by nearly 80%; the legality of permits issued on the basis of these misrepresentations; the propriety of a condensed preliminary and final land development approval process; and purported improper directives from the Borough Solicitor, who also happened to be the Solicitor for Blair County.  I would conclude that the issues raised by Objectors implicated due process, thereby tolling the 30-day appeal period under section 1002-A(a) of the MPC.

Furthermore, while the Majority correctly concludes that Objectors' complaint in equity constituted a timely appeal of the Borough Council's August 13, 2015 approval of PSL's land development plan, I disagree with the Majority's

---

[1] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §11002-A(a).

conclusion that the Borough's simultaneous approval of "Preliminary/Final Land Development Plan" was proper. To the contrary, I agree with Objectors that separate approvals of the land development plan are anticipated and required by Chapter 22, sections 303, 304, and 305 of the Hollidaysburg Ordinance.

In this regard, section 303 of the Hollidaysburg Ordinance addresses an applicant's submission of a preliminary plan, which is then forwarded to the Borough's Planning Commission, Borough Council, and county planning agency for review. Section 303(2) specifically precludes the Borough from approving a preliminary plan "until the county's review is received or until 30 days following the date the application was sent to the county." (Slip op. at 10.) Section 304 discusses review of the preliminary plan by Borough Council and the Planning Commission, and imposes time limitations on their approval or disapproval of the same. Section 304(8) states that the "preliminary plan approval shall stipulate the date by which application for final plan approval **must be submitted**" and, if a development is to be completed in phases or stages, said approval "**shall include a timetable for the submission of the final plans for the various phases**." (Slip op. at 12) (emphasis added). Section 305 states, in pertinent part, that "the applicant **shall submit a final plan** in accordance with the time periods specified by the preliminary plan approval." (Slip op. at 13) (emphasis added).

These sections of the Hollidaysburg Ordinance clearly reveal the Borough's requirement for separate filings of the preliminary and final land development plans. The Majority notes that the preliminary plan in this case was approved without conditions and that there was no difference between the preliminary and final plans, thereby rendering the Borough's approval of the final plan automatic. Nevertheless, such automatic approval does not obviate the

Ordinance's requirement for separate approvals of the preliminary and final land development plans.

Accordingly, I would reverse the trial court's order sustaining the preliminary objections of the Borough and PSL.

_____
PATRICIA A. McCULLOUGH, Judge